## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ABDUL WALI SALAM MUHJADIN,**

      Plaintiff,

v.                                              Civil Action No. **3:15CV353**

**NEWBY,** *et al.,*

      Defendants.

### MEMORANDUM OPINION

Abdul Wali Salam Muhjadin, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]   The action proceeds on Muhjadin's Particularized Complaint.  (ECF No. 14.)  The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.   As explained below, Muhjadin's claims lack merit and will be dismissed.

### I.     PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.  The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

where the "'factual contentions are clearly baseless.'" *Clay v. Yates,* 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS

In his Particularized Complaint, Muhjadin raises several claims concerning his medical treatment, the loss of his property, and the responses he received to informal complaints and grievances that he submitted regarding his property. Prior to August 13, 2014, Muhjadin was admitted to the Southside Regional Medical Center ("SRMC") and was diagnosed with a grand mal seizure, black eye, multiple concussions, and an equilibrium problem. (Part. Compl. ¶ 1.) Staff at SRMC also found that Muhjadin "was over medicated on [his] medication that was supposed to stop [his] seizures but was instead causing them to happen more frequently." (*Id.*)

After he was released from SRMC, Muhjadin was placed in the medical infirmary at Sussex II State Prison ("SIISP"). (*Id.* ¶ 2.) While he was there, Defendant Newby, a lieutenant who was the acting watch commander for B-Break night shift, ordered that Muhjadin's property be packed and brought to Muhjadin. (*Id.*) On August 13, 2014, Defendant Williams, a

lieutenant who was acting assistant watch commander and supervisor of the infirmary for B-Break night shift, woke Muhjadin and informed him that his property would be packed so that another inmate could be moved into Muhjadin's cell. (*Id.* ¶ 3.) When Muhjadin sat up to protest, Williams "pushed [him] back down into a laying position." (*Id.*)

Subsequently, Newby ordered Defendants Seabuagh and Chandler, both correctional officers, to report to Defendant Depriest, a sergeant, so that Muhjadin's property could be packed. (*Id.* ¶ 4.) Seabuagh and Chandler packed Muhjadin's property. (*Id.* ¶ 5.) According to Muhjadin, Depriest did not ensure that his property was packed according to Virginia Department of Corrections ("VDOC") policies. (*Id.* ¶ 4.) Chandler delivered the property to Muhjadin's bedside in the infirmary. (*Id.* ¶ 5.) However, Defendant Pelham, a correctional officer for the infirmary, would not accept the property because there was no inventory sheet. (*Id.*) Chandler told Pelham that Muhjadin said "'he was good'" and left the property at Muhjadin's bedside. (*Id.*) Subsequently, Defendant Helyer, a correctional officer in the infirmary, moved Muhjadin's "property from his bedside but never ever did inventory it." (*Id.* ¶ 13.) According to Muhjadin, Defendants Clarke, the Director of the VDOC, Vargo, the Warden of SIISP, and Jones, the Chief of Security for SIISP, failed to train all of these officers with respect to the proper way to handle inmate property. (*Id.* ¶¶ 8–10.)

On September 2, 2014, Muhjadin submitted an informal complaint regarding his missing property. (ECF No. 14–1, at 5.) Defendant Byrd, the day shift supervisor for personal property and the infirmary, responded, stating "Property is not responsible for your property. You are responsible for your property." (*Id.*; *see also* Part. Compl. ¶ 14.) Muhjadin then submitted a grievance, which Defendant James, the Institutional Ombudsman, rejected as untimely. (ECF

No. 14–1, at 1–4; *see also* Part. Compl. ¶ 6.) Defendant Woodson, the Regional Ombudsman for the Eastern Region, denied Muhjadin's appeal. (Part. Compl. ¶ 7.)

The Court construes Muhjadin's Particularized Complaint to raise the following claims for relief:

Claim One:     All Defendants violated Muhjadin's rights under the Eighth Amendment[2] by failing to recognize that medical staff were over-medicating Muhjadin with his anti-seizure medication. (Part. Compl. ¶ 1.)

Claim Two:     Defendant Williams violated Muhjadin's rights under the Eighth Amendment by utilizing excessive force when he pushed Muhjadin back into a "laying position" on his infirmary bed. (*Id.* ¶ 3.)

Claim Three:   Defendants Newby, Williams, Depriest, Chandler, Seabuagh, Pelham, and Helyer violated Muhjadin's rights under the Fourth Amendment[3] by entering his cell to pack his property. (*Id.* ¶¶ 2–5, 11–13.)

Claim Four:    Defendants Newby, Williams, Depriest, Chandler, Seabuagh, Pelham, and Helyer violated VDOC operating procedures, as well as Muhjadin's due process rights under the Fourteenth Amendment,[4] by failing to ensure that his property was properly packed and stored, and for causing his property to be misplaced. (*Id.*)

Claim Five:    Defendants Byrd, James, and Woodson violated Muhjadin's rights under the Fourth and Ninth[5] Amendments by the way they answered his grievances. (*Id.* ¶¶ 6–7, 14.)

Claim Six:     Defendants Clarke, Vargo, and Jones violated Muhjadin's rights under the Fourth Amendment by failing to properly train the other named

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[5] "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend IX.

Defendants regarding the proper procedures for handling an inmate's property. (*Id.* ¶¶ 8–10.)

### III. ANALYSIS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). As discussed below, Muhjadin has failed to allege that the named Defendants have done so.

### A. Overmedication

In Claim One, Muhjadin alleges that all the named Defendants violated his rights under the Eighth Amendment because they failed to recognize that medical staff were overmedicating Muhjadin "on [his] medication that was supposed to stop [his] seizures but was instead causing them to happen more frequently." (Part. Compl. ¶ 1.)

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Muhjadin has not named any medical providers as Defendants in this action. Rather, Muhjadin alleges that the named Defendants all failed to recognize that he was being overmedicated. However,

> [i]f a prisoner is under the care of medical experts . . ., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-

7

medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Iko*, 535 F.3d at 242 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Muhjadin has failed to allege facts that indicate that the named Defendants knew they exposed Muhjadin to an excessive risk by relying on the opinions of the medical department at SIISP. *See Farmer*, 511 U.S. at 837. Accordingly, Claim One will be DISMISSED.

### B.    Excessive Force

In Claim Two, Muhjadin alleges that Defendant Williams violated his rights under the Eighth Amendment by utilizing excessive force when he pushed Muhjadin back into a "laying position" on his infirmary bed. (Part. Compl. ¶ 3.)

When an inmate claims that a prison official used excessive force against him or her, the proof required for the objective component of an Eighth Amendment claim is less demanding, and that for the subjective component is more demanding. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). With respect to the objective component, the inmate must allege facts suggesting that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010); *see id.* at 38 (observing that "a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim" (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992))).

With respect to the subjective component, the inmate must allege "'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Specifically, "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). "When prison officials maliciously and sadistically use force to cause

harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9 (internal citation omitted).

Here, Muhjadin has failed to satisfy either the objective or subjective component for his Eighth Amendment claim against Defendant Williams. Clearly the push here constitutes a trivial use of force. *See Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9). Moreover, Muhjadin fails to allege facts suggesting that Williams acted "maliciously and sadistically to cause harm" when Williams pushed him. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). Accordingly, Muhjadin fails to adequately allege an Eighth Amendment claim for the excessive use of force against Defendant Williams, and Claim Two will be DISMISSED.

### C.    Fourth Amendment

In Claim Three, Muhjadin contends that Defendants Newby, Williams, Depriest, Chandler, Seabuagh, Pelham, and Helyer violated his Fourth Amendment rights by entering his cell to pack his property. (Part. Compl. ¶¶ 2–5, 11–13.) However, it is well settled that inmates have no expectation of privacy in their prison cells, and therefore have no Fourth Amendment protection against searches thereof. *DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 324 (E.D. Va. 2000) (quoting *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984)). Therefore, Claim Three will be DISMISSED.

### D.    Fourteenth Amendment

In Claim Four, Muhjadin alleges that Defendants Newby, Williams, Depriest, Chandler, Seabuagh, Pelham, and Helyer violated VDOC operating procedures, as well as his due process rights under the Fourteenth Amendment, by failing to ensure that his property was properly packed and stored, and for causing his property to be misplaced. (Part. Compl. ¶¶ 2–5, 11–13.)

The Due Process Clause applies only when government action deprives an individual of an legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).

Violations of prison operating procedures do not implicate due process rights and are not cognizable under § 1983. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990); *Puranda v. Hill*, No. 3:10CV733–HEH, 2012 WL 2311844, at *5 (E.D. Va. June 18, 2012). The Due Process Clause is also not implicated by a negligent act of a state official that causes the unintended loss of property. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Moreover, Virginia's provision of adequate post-deprivation remedies forecloses Muhjadin's due process claim for the deprivation of his property. *See id.*; *Wilson v. Molby*, No. 1:12cv42 (JCC/JFA), 2012 WL 1895793, at *6–7 (E.D. Va. May 23, 2012); *Henderson v. Virginia*, No. 7:07–CV–00266, 2008 WL 204480, at *10 n.7 (W.D. Va. Jan. 23, 2008). Negligent and intentional deprivations of property "do not violate [the Due Process] Clause provided . . . that adequate state post-deprivation remedies are available." *Hudson*, 468 U.S. at 533.

Virginia has provided adequate post-deprivation remedies for deprivations caused by state employees. Under the Virginia Tort Claims Act, Virginia has waived sovereign immunity for damages for "negligent or wrongful" acts of state employees acting within the scope of employment. Va. Code Ann. § 8.01–195.3 (West 2016). The United States Court of Appeals for the Fourth Circuit has held that the Virginia Tort Claims Act and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. *See Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985). Because the availability of a tort action in state court fully satisfies the requirement of a meaningful post-deprivation process, Muhjadin cannot state a claim for the loss of his property under the Fourteenth Amendment. *See Wilson*, 2012 WL

1895793, at *6–7; *Henderson*, 2008 WL 204480, at *10 n.7. Accordingly, Claim Four will be DISMISSED.

### E.   Grievance Procedure

In Claim Five, Muhjadin contends that Defendants Byrd, James, and Woodson violated his rights under the Fourth and Ninth[6] Amendments by the way they answered his grievances. (Part. Compl. ¶¶ 6–7, 14.) Muhjadin, however, has "no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Furthermore, "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal." *Brown v. Va. Dep't of Corr.*, No. 6:07CV00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009). Therefore, Claim Five will be DISMISSED.

### F.   Failure to Train

In Claim Six, Muhjadin alleges that Defendants Clarke, Vargo, and Jones violated his rights under the Fourth Amendment by failing to adequately train the other named Defendants regarding the proper procedures for handling an inmate's property. (Part. Compl. ¶¶ 8–10.) However, in the absence of a constitutional violation on the part of the employees being supervised, there can be no liability under § 1983 on the party of the employer. *Huggins v. Weider*, 105 F. App'x 503, 505-06 (4th Cir. 2004); *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001). Because the Court has already determined that the other named Defendants did not violate Muhjadin's constitutional right, Muhjadin cannot state a claim for failure to train against Defendants Clarke and Vargo. Accordingly, Claim Six will be DISMISSED.

---

[6] Muhjadin's citation to the Ninth Amendment is misplaced, as "the Ninth Amendment refers only to unenumerated rights, while claims under § 1983 must be premised on specific constitutional guarantees." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006) (citation omitted); *see Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, Muhjadin's claims will be DISMISSED.  The action will be DISMISSED.  The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

/s/

John A. Gibney, Jr.
United States District Judge

Date:   10/ 3/16
Richmond, Virginia

12